UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-CV-183-TBR

MICHAEL D. PADGETT,                                                                PLAINTIFF

v.

DEPUTY CORTEZ BUTLER, et al.,                                               DEFENDANTS

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on various motions filed by Plaintiff Michael D. Padgett, including: a Motion for Default Judgment, [DN 9]; a "Motion for Leave to Deem Request For Admissions Admitted and for Summary Judgment Based on Those Admissions," [DN 15]; a "Motion for Relief," [DN 17]; a "Motion to Enjoin [Kentucky Department of Corrections ("KDOC")] in this Lawsuit and for the Court to Order KDOC to Pay Any Monetary Damages to the Plaintiff on Behalf of Defendants Cortez Butler and Brandon Lloyd" (hereafter, "Motion to Enjoin"), [DN 19]; and a "Motion for Subpoena's (sic) Under [Federal Rule of Civil Procedure] 45" (hereafter, "Motion for Subpoenas"), [DN 24]. In response to these motions, Defendants have filed a "Motion to Dismiss/Motion for Summary Judgment," [DN 26]. Plaintiff has filed multiple responses to Defendants' motion. [DN 27; DN 29; DN 31]. No reply has been filed, and all motions are now ripe for review.

I.   BACKGROUND

On November 16, 2020, Plaintiff, an inmate at the Kentucky State Penitentiary ("KSP"), filed the instant pro se complaint under 42 U.S.C. § 1983. [DN 1]. He sues KSP Deputy Cortez

1

Butler and Sergeant Brandon Lloyd in their individual and official capacities. *Id.* Plaintiff alleges excessive force claims against both defendants and alleges that Defendant Butler threatened his life. *Id.* These allegations stem from a July 11, 2020 incident at KSP. *Id.*

## II. ANALYSIS

### A. Plaintiff's Motion for Default Judgment, [DN 9], and Plaintiff's "Motion for Relief," [DN 17]

As noted above, Plaintiff initiated this action on November 16, 2020. [DN 1]. After the Court granted Plaintiff's motion to proceed without payment of fees and costs, [DN 3; DN 4], it entered a Service and Scheduling Order on January 18, 2021, [DN 6]. In that Service and Scheduling Order, the Clerk of Court was directed to forward, by certified mail, a copy of the Complaint and the Service and Scheduling Order to the Justice and Public Safety Cabinet in Frankfort, Kentucky. *Id.* The order further provided that, upon receipt of those documents, the Cabinet's general counsel had thirty days to complete and return a waiver of service form for each defendant. *Id.* In the event that the Cabinet's legal counsel did not represent the defendants, the Court requested that the Cabinet provide a forwarding or last known address for each defendant, at which point the Clerk of Court would direct service on each defendant in accordance with Federal Rule of Civil Procedure 4. *Id.*

On January 27, 2021, the Court received proof of service on the Cabinet's Office of Legal Counsel. [DN 7]. The proof of service does not provide the date upon which service was made; however, it was received by the Court on January 27, 2021. *Id.* The Court therefore understands that the Cabinet was served with a copy of the Complaint and the Service and Scheduling Order no later than January 27, 2021. The Cabinet therefore had thirty days from that date to complete a waiver of service form for each defendant, but only if the Cabinet's legal counsel represented the defendants. *See* [DN 6]. If the Cabinet's Office of Legal Counsel did *not*

represent the defendants, the Cabinet was under no obligation to take further action, though the Court did request that it provide addresses, if known, for the defendants.[1] Because the Cabinet did not file a waiver of service form for either defendant, the Court understands that the Cabinet's Office of Legal Counsel never represented defendants in this matter. Because the Cabinet did not provide any addresses for defendants, the Clerk of Court made no further attempts at service.

Plaintiff then moved for default judgment on April 26, 2021, arguing that he was entitled to a default judgment because Defendants had not yet filed a responsive pleading. [DN 9]. The Court finds that Plaintiff's Motion for Default Judgment was inappropriate for multiple reasons. First, at the time Plaintiff filed his Motion for Default Judgment, service had not been effectuated on either defendant. In fact, there is no proof in the record that either defendant has been served in accordance with Rule 4. However, on September 23, 2021, defense counsel entered a Notice of Appearance on behalf of both defendants. [DN 22]. Defense counsel also filed a waiver of service for each defendant. [DN 23]. Pursuant to Federal Rule of Civil Procedure 12, Defendants then had sixty days in which to file a responsive pleading. *See* Fed. R. Civ. P. 12(a)(1)(A). Defendants filed their Motion to Dismiss/Motion for Summary Judgment on October 22, 2021, well within that time frame. Their responsive pleading was therefore timely.

Second, even if service of process had been effectuated and Defendants had failed to timely respond, Plaintiff's Motion for Default Judgment would be procedurally defunct. Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

---

[1] On June 4, 2021, the Court entered an order directing the Justice and Public Safety Cabinet to respond to Plaintiff's Motion for Default Judgment. [DN 13]. The Cabinet never responded. However, the Cabinet is not a party to this case (and apparently its Office of Legal Counsel does not represent either defendant).

otherwise, the clerk must enter the party's default." After the clerk's entry of default, the plaintiff may seek a default judgment from the Court. *See* Fed. R. Civ. P. 55(b)(2). In this case, Plaintiff has not requested a clerk's entry of default prior to his request for default judgment.

For these reasons, default judgment is inappropriate, and the Court will deny Plaintiff's Motion for Default Judgment, [DN 9]. In Plaintiff's "Motion for Relief," [DN 17], he asks the Court to grant his Motion for Default Judgment, [DN 9], and order the defendants to pay damages. Because the Court is denying Plaintiff's Motion for Default Judgment for the reasons stated above, the Court will also deny Plaintiff's "Motion for Relief," [DN 17].

### B. "Motion for Leave to Deem Request for Admissions Admitted and for Summary Judgment Based on Those Admissions," [DN 15]

In this motion, Plaintiff states that he propounded written discovery on Defendants, and they failed to reply. [DN 15]. He argues that his requests for admission should therefore be deemed admitted and as a result, summary judgment should be granted in his favor. *Id.* However, according to Plaintiff, he served his written discovery on the Justice and Public Safety Cabinet on April 22, 2021. *See* [DN 15-1; DN 15-2]. This is problematic for two reasons. First, as noted above, there is no evidence in the record that the Cabinet represents Defendants. In fact, the Cabinet's failure to file a waiver of service on behalf of Defendants indicates that it does *not* represent the defendants, as explained in more detail above. Further, there is no evidence in the record that Defendants had been served by April 22, 2021. Accordingly, it was improper to propound written discovery on that date, and the defendants' failure to respond to that written discovery is of no consequence. The Court will therefore deny Plaintiff's motion.

### C. Defendants' Motion to Dismiss/Motion for Summary Judgment, [DN 26]

#### 1. Standard of Review

4

In their Motion to Dismiss/Motion for Summary Judgment, [DN 26], Defendants argue that Plaintiff's suit must be dismissed in its entirety for failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Because they have attached documents in support of their motion, they have cautiously labeled it as a "Motion to Dismiss/Motion for Summary Judgment." The Court has reviewed their motion and exhibits and agrees that it is best characterized as one for summary judgment. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (citation omitted). "When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)).

 2. **Exhaustion Requirements**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, a prisoner bringing a § 1983 suit must first exhaust his available administrative remedies. "This requirement is a strong one." *Napier v. Laurel County, Kentucky*, 636 F.3d 218, 222 (6th 2011). It is not a jurisdictional requirement; rather, it "is an affirmative defense that must be pleaded and proved by the defendants." *Mattox*, 851 F.3d at 590 (citing *Jones v. Brock*, 549 U.S. 199, 212 (2007)).

Notably, "[t]here is no uniform federal exhaustion standard." *Id.* Instead, "[a] prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Id.* (citing *Jones*, 549 U.S. at 217–19). The Inmate Grievance Procedure

5

of KSP, where Plaintiff was housed at the time of the incident, is contained within the Kentucky Corrections Policies and Procedures manual, [DN 26-2]. To comply with this grievance procedure, an inmate must complete a written grievance form and submit it to the prison's Grievance Coordinator within five business days of the incident. *Id.* at 8. Once filed, an informal resolution process takes place, in which the Grievance Coordinator and others conduct an inquiry and attempt to informally resolve the grievance. *Id.* at 10. If the inmate is not satisfied with the informal resolution, he or she may seek a Grievance Committee hearing. *Id.* at 11–12. The Grievance Committee's decision can be appealed to the Warden. *Id.* at 12–13. If the inmate is still unsatisfied with the outcome, he may appeal the Warden's decision to the Commissioner. *Id.* at 13.

When analyzing whether Plaintiff adequately complied with KSP's grievance procedure, the Court considers whether he made "affirmative efforts to comply with the administrative procedures" and whether those "efforts to exhaust were sufficient under the circumstances." *Mattox*, 851 F.3d at 590 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (internal quotation marks omitted). Typically, attempts at exhaustion will be insufficient if the plaintiff files an untimely or otherwise procedurally defective grievance. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) "(Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . .").

However, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). This limitation is apparent from the plain language of the PLRA, which prohibits a prisoner from bringing a § 1983 action "until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).

The Supreme Court has explained that "the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)). Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth*, 532 U.S. at 738).

Stated another way, an inmate is only required to exhaust *available* administrative remedies. Administrative remedies have been considered "unavailable" under the following circumstances: (1) officials are "unable or consistently unwilling to provide any relief to aggrieved inmates," (2) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," to the point that "no ordinary prisoner can discern or navigate it," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. Importantly, the burden of demonstrating exhaustion—including the availability of the administrative remedies—rests on the defendants. *Surles*, 678 F.3d at 455.

### 3. Plaintiff's Attempts to Exhaust His Administrative Remedies

In their motion, Defendants contend that Plaintiff first filed a grievance about the July 11, 2020 incident on July 22, 2020. [DN 26-2, p. 2]; *see also* [DN 26-3, pp. 4–5]. However, Defendants argue that the grievance was insufficient to satisfy the exhaustion requirements because (1) it does not name any individual wrongdoer; (2) it does not allege that Plaintiff's life was threatened; and (3) it was filed more than five business days after the alleged incident and is therefore untimely under the Kentucky Corrections Policies and Procedures. [DN 26-1, p. 2]. That grievance was ultimately rejected as "non-grievable" because, according to the Grievance Coordinator, it was an "Adjustment Committee decision." [DN 26-3, p. 3]. The Grievance

7

Counsel explained on the rejection form, "You [illegible] pending 2 disciplinary reports regarding the incident. Seek relief through your appeal."[2] *Id.*

Defendants also acknowledge that Plaintiff filed a second grievance on July 29, 2020. [DN 26-1, p. 2]. They argue that this grievance also fails to satisfy the exhaustion requirements because (1) it is untimely; (2) it names Defendant Butler, but not Defendant Lloyd; and (3) it does not allege that Butler threatened Plaintiff's life. *Id.* That grievance was rejected. [DN 26-3, p. 6]. Interestingly, despite the Grievance Coordinator's earlier determination that the issue was "non-grievable," he rejected Plaintiff's second grievance because "[t]his issue has been previously grieved [referring to the July 22, 2020 grievance] and cannot be filed again until 6 months past." *Id.*

Given these perceived deficiencies in Plaintiff's grievances, the defendants argue that he failed to properly exhaust his administrative remedies. In response, Plaintiff argues that he actually submitted his grievance to the Grievance Coordinator on July 14, 2020, but the institution did not officially submit it until July 21, 2020. [DN 27]. For support, he points to the date entry beside his signature, where he wrote "3/14/20." *Id.*; *see* [DN 26-3, p. 5]. He contends that he mistakenly wrote down the wrong month, but he intended to sign it "7/14/20," which he claims is the date that he submitted the grievance. [DN 27]. Plaintiff further argues that he failed to name specific individuals because he was not aware of their names at the time that he wrote his grievance. *Id.* Lastly, he challenges the availability of the grievance procedure, arguing that it was not actually available to him and as a result, his suit cannot be barred for failure to comply with that grievance procedure. *Id.*; *see also* [DN 29; DN 31]. The defendants have not replied to Plaintiff's response.

---

[2] Plaintiff states that he appealed the Adjustment Committee's decision "to no avail." [DN 29, p. 3].

In considering these arguments, the Court first finds that Plaintiff made some affirmative efforts to comply with the prison's grievance procedure by filing his grievance with the Grievance Coordinator. *See Mattox*, 851 F.3d at 590 (explaining that a Court must consider whether the prisoner made "affirmative efforts to comply with the administrative procedures"). However, the Court must also consider whether those "efforts to exhaust were sufficient under the circumstances." *Id*. The evidence of record demonstrates that Plaintiff filed a grievance with the Grievance Coordinator, which he signed and dated "3/14/2020" and claims was signed and submitted on July 14, 2020. [DN 26-3, p. 5]. It was stamped as "received" on July 22, 2020. *Id.* Defendants have not filed a reply challenging Plaintiff's claim that he signed and submitted his first grievance on July 14, 2020, within the five-day period permitted by the prison's grievance policy. Given the discrepancy in the dates on the grievance and Defendants' failure to reply, the Court finds that Plaintiff raised a genuine dispute of fact as to whether his grievance was timely and otherwise procedurally sufficient.[3]

Once Plaintiff presented a genuine dispute of material fact regarding the sufficiency of his grievance and argued that the administrative remedy was unavailable to him, the defendants were required to come forward with evidence demonstrating that the grievance procedures were, in fact, available to Plaintiff. *See Surles*, 678 F. 3d at 457, n.10. At the summary judgment stage, the defendants' burden is a high one. *Id.* at 455. They must present evidence "so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). In this case, Defendants have not replied to Plaintiff's arguments about the availability of the administrative remedies. Nevertheless, the

---

[3] The Court makes no ruling as to whether the grievance was actually timely and procedurally sufficient because, for the reasons stated herein, the grievance procedures were not actually available to Plaintiff.

Court turns to the evidence of record to determine whether the grievance procedures were actually available to Plaintiff.

Plaintiff's first grievance was rejected as "non-grievable." [DN 26-3, p. 3]. The Kentucky Corrections Policies and Procedures manual, [DN 26-2], states that "[a] grievable issue shall include any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue," including but not limited to "[p]ersonal action by staff" and "[s]taff conflict[s]." *Id.* at 2. Non-grievable issues include, among other things, "[d]isciplinary procedures" and "Adjustment Committee decision[s]." *Id.* The Grievance Coordinator apparently relied on these provisions when rejecting Plaintiff's grievance, as he explained that Plaintiff had two related disciplinary proceedings pending and should therefore "[s]eek relief through [an] appeal." *Id.*

Either the Grievance Coordinator misinterpreted the grievance policy and incorrectly rejected the grievance as "non-grievable," or he correctly followed the procedures, which would not have allowed Plaintiff to file a grievance when two related disciplinary proceedings were pending. Neither scenario supports Defendant's arguments. First, if the Grievance Coordinator misinterpreted the grievance policy and Plaintiff's issue was actually grievable, Plaintiff could not possibly have exhausted his administrative remedies. For example, if he had filed a timely and procedurally perfect grievance, it would still have been rejected as "non-grievable" based on the Grievance Coordinator's misunderstanding of the prison policy. Under those circumstances, the grievance procedures would have been unavailable to Plaintiff.

If the Grievance Coordinator correctly interpreted the Policies and Procedure manual,[4] an inmate with a related disciplinary proceeding could not and should not follow the prison's

---

[4] To be clear, the Court understands that the grievance procedures prohibit a prisoner from filing a grievance to challenge an Adjustment Committee's decision because the prisoner should instead follow the procedures for appealing that decision. Based on the Court's reading of the grievance procedures, an inmate is not prohibited from filing a grievance just because it is related to a disciplinary proceeding.

10

grievance procedures to raise his constitutional concerns. Instead, he would have to wait for a decision from the Adjustment Committee and then appeal that decision. The Court finds this to be a nonsensical practice for multiple reasons. First, a prisoner who receives a favorable decision from the Adjustment Committee is unlikely to appeal, yet he would have no other avenue to raise his constitutional concerns and exhaust his administrative remedies. Further, a disciplinary proceeding is focused on the prisoner's alleged misconduct, while the prisoner's grievance relates to the prison official's alleged unconstitutional actions. The Court is unaware of any policy that would require the Adjustment Committee to conduct a full investigation into the prisoner's allegations when considering his disciplinary infraction. Stated another way, the Court has no reason to believe that an Adjustment Committee disciplinary proceeding is the appropriate avenue to explore a prisoner's constitutional claims.

Lastly, the Court is mindful that the defendants in this case do *not* argue that Plaintiff was required to appeal the Adjustment Committee decision in order to exhaust his administrative remedies.[5] Defendants instead argue that Plaintiff was required to comply with the prison's grievance procedures. Yet Defendants made no effort to respond to Plaintiff's argument that those grievance procedures were unavailable to him. For the reasons stated above, the Court finds that the prison's grievance procedures were *not* available to Plaintiff. Because that administrative remedy was unavailable to him, he was not required to exhaust it before filing this suit. *Ross*, 578 U.S. at 642.

In sum, the Court finds that Defendants have failed to satisfy their burden of proving "that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox*, 851 F.3d at 590 (citation omitted). More specifically, the Court finds that the defendants

---

[5] Even if Defendants had made this argument, Plaintiff contends that he *did* appeal the Adjustment Committee's decision and Defendants do not challenge that contention.

have failed to produce any evidence (or even argument) that the grievance procedures were actually available to Plaintiff. The Court will therefore deny Defendants' Motion to Dismiss/Motion for Summary Judgment, [DN 26].

### D. Plaintiff's Motion to Enjoin, [DN 19]

Because the Court will deny Defendants' motion and allow the case to proceed, it next considers Plaintiff's two remaining motions. First, Plaintiff has filed a "Motion to Enjoin KDOC in this Lawsuit and for the Court to Order KDOC to Pay Any Monetary Damages to the Plaintiff on Behalf of Defendants Cortez Butler and Brandon Lloyd," [DN 19]. In this motion, Plaintiff argues that "KDOC is liable for failure to protect the plaintiff from excessive force by its employees," and KDOC's administrative officials were deliberately indifferent to Plaintiff during the July 11, 2020 incident giving rise to this case. *Id.* Plaintiff therefore "requests this Court enjoin KDOC as a defendant in this action, as they are liable for failure to protect the plaintiff." *Id.* The Court therefore understands that Plaintiff's Motion to Enjoin is actually a motion to amend his first complaint.

Under Federal Rule of Civil Procedure 15, a plaintiff may amend his complaint once as a matter of course within twenty-one days of serving it, or within twenty-one days "after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a district court "may deny a motion to amend where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

12

etc.'" *Sims v. Atrium Medical Corp.*, 349 F.Supp.3d 628, 636 (W.D. Ky. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In this case, Plaintiff's Motion to Enjoin was filed on September 16, 2021, before Defendants were served and before they filed a waiver of service. [DN 19]. Thus, this case does not fit squarely within Rule 15(a)(1), which allows a plaintiff to amend his complaint as a matter of course within "21 days after serving it." But, even assuming that Plaintiff's motion to amend was premature, the Court would still grant leave to amend. On this point, the Court notes that there is no evidence of undue delay, bad faith, or dilatory motive; rather, the Court understands that Plaintiff is proceeding pro se and may not have understood the need to add KDOC as a defendant in his original complaint. Further, this is Plaintiff's first attempt to amend his complaint, and Defendants, who only recently waived service, are unlikely to suffer undue prejudice as a result of the amendment. Lastly, the Court notes that KDOC employs Defendants and therefore should already be aware of these proceedings. The Court will therefore grant Plaintiff's Motion to Enjoin, which the Court construes as a motion to amend, and will order Plaintiff to file an amended complaint.

### E. Plaintiff's Motion for Subpoenas, [DN 24]

Lastly, Plaintiff moves this Court for a subpoena directing the warden of the Kentucky State Penitentiary to produce security video footage of the July 11, 2020 footage. [DN 24]. Plaintiff previously made an identical request, [DN 8], which was denied by this Court because "the video footage may be requested through discovery in this action." [DN 13]. Plaintiff explains that he has re-filed his motion for a subpoena because Defendants refused to answer discovery. [DN 24]. However, he filed this second motion for a subpoena on October 23, 2021, shortly after Defendants entered their waiver of service, [DN 23], which, as explained above,

allowed them sixty days to file a responsive pleading. They had not yet filed their responsive pleading, and discovery had not yet commenced. As noted above, the written discovery that Plaintiff propounded on the Justice and Public Safety Cabinet was improper, and neither the Cabinet (which is not a party to this case) nor the defendants (who had not yet been served and did not receive copies of those discovery requests) were required to respond to the discovery requests. The Court again notes that the video footage that Plaintiff seeks can be obtained through traditional discovery methods. Accordingly, the Court will deny this motion.

### III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

1. Plaintiff's Motion for Default Judgment, [**DN 9**], is **DENIED**.

2. Plaintiff's "Motion for Leave to Deem Request for Admissions Admitted and for Summary Judgment Based on Those Admissions," [**DN 15**], is **DENIED**.

3. Plaintiff's "Motion for Relief," [**DN 17**], is **DENIED**.

4. Plaintiff's Motion to Enjoin, [**DN 19**], which the Court construes as a motion to amend, is **GRANTED**. Plaintiff **SHALL** file his First Amended Complaint on or before **February 1, 2022**.

5. Plaintiff's Motion for Subpoenas, [**DN 24**], is **DENIED**.

6. Defendants' Motion to Dismiss/Motion for Summary Judgment, [**DN 26**], is **DENIED**.

7. A telephonic scheduling conference is **SCHEDULED** for **February 24, 2022** at 9:00 a.m. CST.  Counsel and Plaintiff must call **1-877-848-7030** then give the **Access Code 2523122 and #**, **then when prompted press # again** to join the call.

cc: Counsel of Record
   Plaintiff, pro se