UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

MICHAEL D. PADGETT                                                                  PLAINTIFF

v.                              CIVIL ACTION NO. 5:20-CV-P183-JHM

DEPUTY CORTEZ BUTLER et al.                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for summary judgment filed by Defendants Travis Bradley, Cortez Butler, Cookie Crews, Scott Jordan, and Brandon Lloyd (DN 141). For the following reasons, the motion will be granted in part and denied in part.

**I. BACKGROUND**

The verified complaint, filed while Plaintiff was an inmate at the Kentucky State Penitentiary (KSP), sued Officer Butler and Sergeant Lloyd, both KSP employees, in their individual and official capacities (DN 1). Plaintiff stated that on July 11, 2020, while restrained with handcuffs and leg shackles, he was being escorted to his cell by Defendants Butler and Lloyd. DN 1, p. 4. He alleged that Defendants Butler and Lloyd "grabbed" him around the neck and "slammed" him face first into concrete. *Id*. Plaintiff alleged that he was "knocked out" for more than a minute, two of his teeth were knocked out, his eye was swollen shut, he required 14 stitches, and was concussed. *Id*. He further alleged that Defendant Butler threatened him afterwards that "'[i]f I file a lawsuit on him, next time he will make sure I'm dead.'" *Id*. at 5.

Among the attachments to the complaint was a KSP medical progress note dated July 11, 2020, indicating that Plaintiff was transported to the hospital due to his loss of consciousness of over one minute with "gurgling sounds and snoring respirations." DN 1-2, p. 11-12. He also attached medical records from the hospital supporting his description of his injuries. *Id*. at 15-17.

Defendants Butler and Lloyd filed a combined motion to dismiss/motion for summary judgment arguing that Plaintiff's claims against them were not administratively exhausted (DN 26). The Court denied the motion, finding that Defendants neither provided evidence showing, nor argued, that the grievance procedures were actually available to Plaintiff. DN 32, pp. 11-12.

The Court allowed Plaintiff to amend his complaint to add individual and official capacity claims against Defendants Warden Jordan, Kentucky Department of Corrections (DOC) Commissioner Crews, and Unit Administrator Bradley that they failed to protect Plaintiff from Defendants Butler and Lloyd's use of excessive force. *See* DNs 35 (verified amended complaint) and 44. The amended complaint alleged that Defendant Bradley witnessed the incident but rather than intervene he "laughed and joked about killing the Plaintiff with [Defendant] Butler." DN 35, pp. 4-5. He also alleged that Defendants Crews and Jordan had a custom of allowing the use of excessive force and justifying it by "pointing to the inmates['] actions," resulting in deliberate indifference to inmates' safety. *Id*. at 5.

Plaintiff filed several motions for summary judgment (DNs 42, 64, 74, and 108) before the resolution of certain discovery disputes. The Court summarily denied these motions and referred the case to the Magistrate Judge to enter a new scheduling order, resolve any remaining discovery disputes, and provide a deadline for filing dispositive motions (DN 118).

Defendants then filed the instant motion for summary judgment (DN 141). Plaintiff filed a response (DN 143) and a separate memorandum in support (DN 145).[1] Defendants did not file a reply.

Plaintiff also filed a supplement to his response (DN 148). The Court will not consider this supplement as the Court's Local Rules do not provide for a supplemental response to a motion.

---

[1] Plaintiff explained that this memorandum in support was filed after his response because it took time for Plaintiff to obtain information from the witnesses whose affidavits are attached thereto. DN 144.

2

*See* LR 7.1(c). In any event, the arguments contained therein were raised in Plaintiff's response and separate memorandum.

## II. STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir.

May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. UNDISPUTED FACTS

The Court's careful review of the record reveals that the following facts are undisputed.

Two distinct incidents occurred on July 11, 2020. The first occurred when, while escorting Plaintiff outside of his cell, Defendant Lloyd placed Plaintiff on the floor because, according to Defendant Lloyd, Plaintiff attempted to move his handcuffed hands from behind his back to his front. DN 141-2, p. 2. No excessive force was used at this time. DN 143-1, p. 3 (Plaintiff's response to the summary-judgment motion, stating, "There was no excessive force used on Plaintiff when Lloyd placed [him] on the ground the first time[.] [T]he complaint is pointing to the second incident[.]").

The second incident occurred minutes later after Defendants Lloyd and Butler raised Plaintiff upright and began escorting him back to his cell, at which point Plaintiff was taken to the floor again. DN 141-2, p. 2. The cause is disputed (Defendants contend that Plaintiff spit on Defendant Butler), but it is undisputed that when Defendants Butler and Lloyd took Plaintiff down,

4

Plaintiff's face made contact with the floor. *Id.* It is this incident that is the genesis of Plaintiff's claims.

Plaintiff was wearing handcuffs, with his hands behind his back, and leg shackles during both incidents. DN 143-2, p. 5 (Defendant Jordan's response to request for admission).

Plaintiff acknowledges that he was being argumentative before the second incident. DN 143-1, p. 3.

Plaintiff suffered significant injuries after the second incident requiring a visit to a hospital emergency room. DN 1-2, pp. 11-12 (KSP medical note that Plaintiff would be sent to the ER); DN 142-2, p. 17 (KSP Occurrence Report of transport of Plaintiff to Baptist Hospital on July 11, 2020, for treatment of head injury). Plaintiff presented at the hospital with two teeth fractured in half; a cut above his left eyebrow requiring stitches; his left eye swollen shut; pain in the left side of his jaw, neck, and back; nausea; and a concussion. DN 1-2, pp. 15-17.

Video footage existed of the incident, but Defendants have not produced that footage because, according to them, it has been corrupted and, therefore, not available. *See* DN 94 (Defendants' response to Plaintiff's motion for sanctions for not supplying video footage), 94-1 (affidavit of KSP Correctional Major John Gibbs in support); DN 143 pp. 5-6; DN 143-2, p. 7 (Defendant Jordan's response to request for admission).

At the disciplinary hearing, Plaintiff pleaded not guilty but was found guilty of physical action against an employee. DN 109; DN 74-1, p 1.

Plaintiff is no longer housed at KSP. DN 104.

Disputed issues of material facts remaining before the Court are whether Plaintiff spit on Defendant Butler before the second incident; whether Defendants Butler and Lloyd acted with

5

malicious intent during the second incident; and whether Defendants Bradley, Crews, and Jordan were present during the second incident.

## IV. ANALYSIS

### A. Official-capacity claims

Defendants argue that Plaintiff's claims against them in their official capacities must be dismissed because they are barred by the Eleventh Amendment.

The Court agrees that the Plaintiff may not recover monetary damages against Defendants in their official capacities. "[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). State officials like Defendants sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169.

In addition to monetary relief, the complaint and amended complaint requested injunctive and declaratory relief which the Eleventh Amendment does not bar. DN 1, p. 6; DN 35, p. 6. However, Plaintiff's requests for injunctive and declaratory relief are now moot because Plaintiff is no longer housed at KSP. *See* DN 104; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained). The Court will grant summary judgment to Defendants on the official-capacity claims.

## B. Excessive-force claims against Defendants Butler and Lloyd

Defendants next argue that Plaintiff fails to establish an Eighth Amendment excessive-force claim against Defendants Butler and Lloyd. They further assert, without citation to the record, that "Plaintiff does not deny that he argued with officers, tried to slip his cuffs, and bent down in an attempt to move his cuffed hands from the back to the front. It is also undisputed that Defendants Butler and Lloyd placed Plaintiff on the ground to maintain control of him." DN 141-1, p. 4. Defendants argue that they acted in good faith in using the necessary force required to "place" him on the ground. *Id*. They further assert, "Plaintiff has offered no proof or evidence that Defendants acted maliciously or sadistically to cause harm to Plaintiff." *Id*. at 5.

Defendants attach only one exhibit -- a KSP Internal Affairs (IA) Report of Investigation dated July 15, 2020. DN 141-2. It states that it was prepared by Seth Mitchell, KSP Internal Afffairs. *Id*. at 5. The report's findings were that Plaintiff was "placed on the ground. This was done to maintain control of Inmate Padgett due to a staff assault and to prevent any further assaults." *Id*.

### 1. Admissibility of Defendants' evidence

Plaintiff argues that the IA report is not admissible evidence because it is impermissible hearsay. DN 143-2, pp. 4-5. He asserts, without evidentiary support, that Mitchell is "unreliable[;] has a propensity to [e]ngage in excessive force himself[;]" and was demoted after he was caught trying to strangle an inmate. *Id*. at 5.

"Rule 803(8) of the Federal Rules of Evidence provides an exception to the rule against hearsay for a public record which sets out 'factual findings from a legally authorized investigation' and where 'the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.'" *McDaniel v. Bechard*, No. 2:18-CV-12843, 2020 WL 289307,

7

at \*4 (E.D. Mich. Jan. 21, 2020). Courts must presume that reports submitted pursuant to Rule 803(8) are admissible, so "the burden is upon the opponent to show that the report [is] inadmissible because its sources of information or other circumstances indicated a lack of trustworthiness." *Simpkins v. Boyd Cnty. Fiscal Ct.*, No. 21-5477, 2022 WL 17748619, at \*10 (6th Cir. Sept. 2, 2022) (internal quotation marks and citation omitted).

"In determining whether the report is sufficiently trustworthy to be admitted, the trial court should consider: (1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Lindsly v. Worley*, No. 1:09-CV-00375, 2010 WL 11538490, at \*6 (S.D. Ohio Apr. 28, 2010) (citing *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir. 2009)).

Here, the report was completed within four days of the incident in question. It does not identify any special skill/experience of Mitchell, and there was no hearing. Although Plaintiff implies that Mitchell is unreliable and that his motivation may not be pure, he offers no evidence in support. On balance, the Court finds it admissible given the presumption that it is admissible. Moreover, court have held reports like this one admissible. *See, e.g.*, *Simpkins*, 2022 WL 17748619, at \*10–12 ("[W]e have held in numerous other cases that such investigative reports are admissible under Rule 803(8).") (and cases therein); *Lindsly*, 2010 WL 11538490, at \*6 ("This Court has previously admitted reports on excessive use of force generated by an internal affairs investigation under Rule 803(8).").

The Court will exclude from evidence the portions of the report summarizing the eyewitness statements. The eyewitnesses in the report had no legal duty to observe the incident involving Plaintiff; their statements are merely components from which Mitchell made his

findings. *See Nowell v. City of Cincinnati*, No. 1:03CV859, 2006 WL 2619846, at *5 (S.D. Ohio Sept. 12, 2006).

*2. Excessive-force standard*

The Eighth Amendment prohibits punishments which "'involve the unnecessary and wanton infliction of pain.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). An Eighth Amendment claim has objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

The objective component requires that the use of force be more than *de minimis*, *see Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992), but the Supreme Court has cautioned that a "significant injury" is not a threshold requirement for sustaining an excessive-force claim. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam); *Johnson v. Sootsman*, 79 F.4th 608, 616 (6th Cir. 2023).

Defendants do not argue that Plaintiff has not met the objective prong, and the Court finds that the objective component is met here. *See, e.g.*, *Johnson*, 79 F.4th at 617 ("We have likewise found actionable force when an officer rammed a handcuffed inmate headfirst into a concrete wall, putting a large gash in his forehead and requiring an immediate hospital visit.").

In the context of an excessive-force claim, the subjective inquiry focuses on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: . . . the extent of the prisoner's injury . . .[;] the nature of the threat that justified the use of force[;]" the

9

proportionality of the force to the threat; and whether "the officer t[ook] any actions designed to reduce the required amount of force[.]" *Johnson*, 79 F.4th at 618.

The IA report details that Mitchell reviewed recorded walk footage of the incident which showed Plaintiff being escorted by Defendants Butler and Lloyd. DN 141-2, p. 2. According to Mitchell, "During this escort, Inmate Padgett turns his head towards Officer Butler and appears to spit on him. At this point Officer Butler and Sergeant Lloyd take Inmate Padgett to the ground. Once on the ground and Inmate Padgett is under control Officer Butler exists the walk." *Id*.

Plaintiff objects to the admissibility of Mitchell's summary of what he saw on the video because the video is not available to Plaintiff or the Court. However, he does not contend that the video that existed was inauthentic.

In response to Defendants' summary-judgment motion, Plaintiff states under penalty of perjury that he did not spit on officers or try to slip his handcuffs. DN 143-1, p. 2. He does acknowledge that he was being argumentative before the take down. *Id*. at 3. He further argues that the issue in dispute is whether he was "placed" on the floor or whether he was "slammed" face first into concrete and that the medical records support his assertion that he was, in fact, "slammed" rather than placed. *Id*. at 5.

Among the attachments to Plaintiff's response is a KSP Information Report signed by Defendant Butler on the date of the incident. DN 143-2, p. 12. Defendant Butler stated that when he arrived on the scene, Plaintiff was on the ground with his hands behind his back and under the control of Defendant Lloyd. *Id*. Defendant Butler stated that after helping Plaintiff get to his feet, he and Defendant Lloyd were escorting Plaintiff to his cell, when Plaintiff looked back at him and spit in his face. *Id*. Defendant Butler stated in the report, "I . . . reacted by taking [Plaintiff] to the ground," at which point he "was advised to exit the walk." *Id*.

10

Plaintiff also has filed the affidavits of three fellow prisoners. DN 145-1. It appears that each was signed in front of a notary, and, in each, the affiant swears or affirms that the statements are true to the best of his knowledge or belief.

The Federal Rules of Civil Procedure provide that a party may rely on an affidavit to establish a genuine dispute of fact, so long as the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Consistent with Rule 56(c)(4) and its predecessor Rule 56(e)(1), courts have applied a strict personal-knowledge requirement to affidavits submitted in summary-judgment proceedings and have held that affidavits which contain qualifiers such as "to the best of my knowledge" do not establish specific personal knowledge. *See, e.g.*, *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that the affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by [Rule] 56(e)").

Here, each of the affidavits are limited to events that the affiant witnessed. Therefore, despite using the qualifier "to the best of my knowledge or belief," the Court finds that these affidavits meet the requirements of Rule 56(c)(4).

The affidavit of Kyrus Cawl avers that on the pertinent date he saw Plaintiff in handcuffs and shackles arguing with Defendants Butler and Lloyd while being escorted to his cell. DN 145-1, p. 1. He further avers:

> It appeared to me from watching that [Defendants Butler and Lloyd] intentionally slammed Padgett's face into the concrete floor. I watched Butler step on the chain that connects the leg irons to Plaintiff's feet, while [] Butler grabbed [Plaintiff] by his throat. [] Lloyd grabbed [Plaintiff] from behind.
> [] I . . . saw [] Butler and [] Lloyd then slam [Plaintiff's] face into the concrete. [Plaintiff's] face made contact with the concrete before his body even touched the ground.

11

> It took C/O's over twenty minutes to allow medical to treat [Plaintiff], this entire time [Plaintiff] lay restrained and unconscious with blood surrounding his head.

*Id*. at 1-2 (cleaned up).[2]

The affidavit of inmate Bobby Barker avers that he witnessed Defendants Lloyd and Butler:

> slam [Plaintiff] into the concrete while [Plaintiff] was restrained. I remember seeing [Plaintiff's] body twitch after making contact with the floor and thinking they killed him. . . . [Plaintiff] was arguing with deputies but I don't think that what happened to him was appropriate. . . . At no time did I witness any form of physical resistance from [Plaintiff]. [Plaintiff] only verbally argued with deputies. He never spit on [] Butler or attempted to get out of his handcuffs.

*Id*. at 3-4 (cleaned up).

The affidavit of Bradley King avers that he was in the medical segregation cell next to Plaintiff after Plaintiff was injured on July 11, 2020. *Id*. at 5. He avers that he witnessed Defendant Butler, who was working in the medical housing unit on the night shift, "threaten to kill [Plaintiff] next time if he sues." *Id*. (cleaned up).

Considering each of the four factors identified by the Supreme Court set forth above in light of the evidence of record, the Court finds that a reasonable jury could find that Defendants Butler and Lloyd acted with malice.

   a. *Extent of injury*

The extent of Plaintiff's injury weighs in favor of finding that Defendants' use of force was excessive.

   b. *Nature of threat*

"In evaluating this factor, the Sixth Circuit recognizes that prison officials must make their decisions in haste under pressure, and frequently without the luxury of a second chance[;] . . .

---

[2] There is video footage in the record of events after Plaintiff was taken to the floor by Defendants Butler and Lloyd – Plaintiff being helped up, taken to the restraint chair for medical staff to assess him and then taken to a medical cell. Review of that footage reveals that a puddle of blood did surround his head. DN 109.

[T]he issue is … not whether the use of force was absolutely necessary in hindsight, but whether the use of force could plausibly have been thought necessary[.]" *Conte v. White*, No. 1:21-CV-1913, 2024 WL 83030, at *12 (N.D. Ohio Jan. 8, 2024) (internal quotation marks and citations omitted).

The only threat identified by Defendants is that Plaintiff, according to them, Plaintiff spit on Defendant Butler. Plaintiff swears under penalty of perjury that he did not spit and Mitchell's review of the footage only records that it appeared that Plaintiff spit. Further, even if Plaintiff did spit, he did so while he was restrained with his hands behind his back and his legs in shackles.

### c. Proportionality of the force

The question is whether Defendants "had a reasonable basis for using the amount of force that [they] did[.]" *Cordell*, 759 F.3d at 582. The Court finds it hard to understand on the record before it that spitting on Defendant Butler while restrained with his hands in handcuffs behind his back and leg shackles required force sufficient to concuss, lacerate his face, and break two teeth. Consequently, the Court finds this factor weighs against Defendants.

### d. Any action taken to reduce the required amount of force

Defendants offer no argument that they could not have achieved control of Plaintiff with less force, for example, by using the same amount of force used a few minutes prior when Plaintiff was placed on the floor by Defendant Lloyd with no injury. This factor weighs against Defendants. *See, e.g.*, *Cordell*, 759 F.3d at 583–84 ("there is no evidence in the record that Deputy McKinney made any effort to moderate the force he used against Cordell except his bare assertion that he "used the minimum amount of force necessary to control . . . Cordell."). Interestingly, the IA report states that the warden had ordered review of the incident because Plaintiff was injured, the

13

report does not contain any information about how Defendants Butler and Lloyd took Plaintiff to the ground or why Plaintiff suffered injury.

The Court finds that Defendants have failed to carry their burden of demonstrating the absence of a genuine issue of material fact whether Defendants Butler and Lloyd acted with malicious intent as required by Fed. R. Civ. P. 56(c).

### C. Failure-to-protect claims against Defendants Bradley, Crews, and Jordan

Defendants assert that Plaintiff has not provided any evidence to support his claims that Defendants Bradley, Crews, and Jordan failed to protect him from the application of excessive force. They argue that "as the DOC Commissioner, Defendant Crews has no involvement in the day-to-day happenings in the various DOC facilities across the state." Specifically, they contend that Plaintiff has produced no proof that they were "subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it, as required by *Farmer [v. Brennan*, 511 U.S. 825 (1994)]." DN 141-1, p. 6. They assert that Defendant Jordan was not the KSP Warden at the time and, therefore, could not have known of any risk to Plaintiff. *Id*. With regard to Plaintiff's allegation that Defendant Bradley witnessed the incident and laughed and joked about killing Plaintiff, Defendants argue that Defendant Bradley was not mentioned in the IA report as being present at the incident, and in response to Plaintiff's interrogatories, Defendant Butler answered that Defendant Bradley was only present "after the incident took place." *Id*. (citing DN 108-2, p. 14).

In response, Plaintiff argues that he may establish the liability of these Defendants by showing that the risk was so obvious they should have known. DN 143-1, p. 6. In support, he points to the fact that Defendant Jordan signed off on an emergency occurrence report created after

the incident.³  *Id*.  He also asserts that "slamming a fully restrained inmate on his face is a very obvious way to harm" Plaintiff.  *Id*.  Plaintiff does not offer any evidence that Defendant Bradley was present during the incident.

A corrections officer is liable for failure to prevent excessive force "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring."  *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citation omitted); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) ("[A] correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating.").  Here, Plaintiff has failed to demonstrate a genuine issue of fact as to whether these Defendants were present at the pertinent time.

Even were these Defendants present, what Plaintiff alleges is a single, brief event, not one that lasted long enough for Defendants, had they been there, to intervene.  *See, e.g.*, *Fultz v. Whittaker*, 261 F. Supp. 2d 767, 780 (W.D. Ky. 2003) (declining to hold an officer liable for a failure to intervene where "[e]veryone agrees that the events happened in a matter of seconds"); *Todhunter v. Swan*, No. 05-CV-74934, 2006 WL 3454796, at *7 (E.D. Mich. Nov. 29, 2006) (finding that a "rapid sequence" of events "afforded [the defendant sheriff's deputy] no opportunity to intervene").

Additionally, although Plaintiff argues that the risk to his safety was obvious, DN 143-1, p. 6, he fails to point to any disputed material fact issue as to Defendants having any indication *before* the second incident that Plaintiff was at risk from the use of excessive force.  *See, e.g.*,

---

³ According to Defendants' answer to Plaintiff's requests for admissions attached as an exhibit to Plaintiff's response, Defendant Jordan became KSP warden on August 1, 2020. DN 143-2, p. 5. He signed that report September 8, 2020. *Id*. at 2.

*Carroll v. Lee*, No. 4:17CV144-RP, 2018 WL 988446, at *2 (N.D. Miss. Feb. 20, 2018) ("Defendants cannot be held constitutionally liable for a failure to protect Carroll from injury based on an after-the-fact knowledge of the fight between the two men[.])."

The Court will grant Defendants' summary-judgment motion on these claims as well.

## V. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendants' summary-judgment motion is **GRANTED** regarding Plaintiff's official-capacity claims and all claims against Defendants Bradley, Crews, and Jordan and **DENIED** as to Plaintiff's Eighth Amendment excessive-force claims against Defendants Butler and Lloyd.

The Clerk of Court is **DIRECTED** to terminate Defendants Bradley, Crews, and Jordan as parties to this action.

Date: February 2, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
 Counsel of record
4414.009